1
2
3
4                    UNITED STATES DISTRICT COURT
5                    EASTERN DISTRICT OF WASHINGTON
6

7  CATRINA ZUMWALT,                    No. 1:14-CV-03076-JTR
8
        Plaintiff,                     ORDER GRANTING PLAINTIFF'S
9                                       MOTION FOR SUMMARY
10        v.                            JUDGMENT
11  CAROLYN W.  COLVIN,
12  Commissioner of Social Security,
13        Defendant.
14

15      **BEFORE THE COURT** are cross-Motions for Summary Judgment.  ECF

16  No. 11, 14.  Attorney D. James Tree represents Catrina Zumwalt (Plaintiff);

17  Special Assistant United States Attorney Lars J. Nelson represents the

18  Commissioner of Social Security (Defendant).  The parties have consented to

19  proceed before a magistrate judge.  ECF No. 22.  After reviewing the

20  administrative record and the briefs filed by the parties, the Court **GRANTS, in**

21  **part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for

22  Summary Judgment; and **REMANDS** the matter to the Commissioner for

23  additional proceedings pursuant to 42 U.S.C. § 405(g).

24                              **JURISDICTION**

25      Plaintiff filed applications for Supplemental Security Income (SSI) and

26  Disability Insurance Benefits (DIB) on December 13, 2010, alleging disability

27  since November 18, 2010, due to post-traumatic stress disorder, bipolar disorder,

28  schizophrenia, attention deficit hyperactivity disorder, and anxiety.  Tr. 59-60, 218.

ORDER GRANTING PLAINTIFF'S MOTION . . .  - 1

The applications were denied initially and upon reconsideration.  Tr. 101-107, 113-124.  Administrative Law Judge (ALJ) John Bauer held a hearing on December 12, 2012, at which Plaintiff, represented by counsel, and vocational expert (VE) Vernon Arne testified.  Tr. 32-58.  The ALJ issued an unfavorable decision on January 18, 2013.  Tr. 19-27.  The Appeals Council denied review on April 3, 2014.  Tr. 1-3.  The ALJ's January 18, 2013, decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on June 3, 2014.  ECF No. 1, 3.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was 38 years old at the alleged date of onset.  Tr. 181.  Plaintiff completed the twelfth grade in 1991 and completed cosmetology school in 1993.  Tr. 218-219.  She has past work as a deli worker, housekeeper, cleaner, and store clerk.  Tr. 225-229.  Plaintiff reported she stopped working because of her conditions on November 18, 2010.  Tr. 218.

At the administrative hearing, Plaintiff testified that her mental health impairments caused fatigue, inability to complete tasks, difficulty staying on task, panic attacks, appetite loss, and an inability to maintain appointments.  Tr. 42, 44, 46-47, 50, 53-55.  Additionally, she testified that her moods are cyclical with periods of severe depressive symptoms when she struggles to get out of bed.  Tr. 53-55.

There are a total of three medical source opinions in the record:  one from a psychological consultative examination performed by Donna J. Johns, Psy.D. stating that "it is not likely she will be able to engage in sustained work-related activities as a result of continuing problems with distractibility and frustration

leading to inappropriate anger responses and difficulty regulating her emotions," Tr. 290, and two from the State agency reviewers, Edward Beaty, Ph.D., and Patricia Draft, Ph.D., concluding that Plaintiff maintained the ability to perform simple, routine tasks and would do best in a small group setting or with just superficial contact with the general public.  Tr. 67, 76, 87, 97.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).  The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.*at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S.  389, 401 (1971).  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097.  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a),

416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon claimants to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once claimants establish that physical or mental impairments prevent them from engaging in their previous occupations. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If claimants cannot do their past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimants can make an adjustment to other work, and (2) specific jobs exist in the national economy which claimants can perform. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### ADMINISTRATIVE DECISION

On January 18, 2013, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since November 18, 2010, the alleged date of onset. Tr. 21.

At step two, the ALJ determined Plaintiff had the following severe impairments: anxiety and mood disorder. Tr. 21. Additionally, the ALJ noted that Gregory Zuck, M.D., diagnosed Plaintiff with anxiety, major depressive disorder, and attention deficit hyperactivity disorder, and that these impairments caused significant limitations in the claimant's ability to perform basic work activities. Tr. 21.

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. Tr. 22-23.

At step four, the ALJ assessed Plaintiff's residual function capacity (RFC) and determined she "could perform a full range of work at all exertional levels, but

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

with the following nonexertional limitations:  perform simple, routine tasks (entry-level work that can be learned within thirty days); and only occasional public contact."  Tr. 23.  The ALJ concluded that Plaintiff was not able to perform her past relevant work.  Tr. 25.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and RFC, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the occupations of housekeeper and plastic molding attendant.  Tr. 26.  Thus, the ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act at any time from November 18, 2010, through the date of the ALJ's decision, January 18, 2012.  Tr. 26.

**ISSUES**

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to accord proper weight to the opinion of examining psychologist, Donna J. Johns, Psy.D., (2) failing to properly consider bipolar disorder and ADHD at step two resulting in the failure to properly consider Plaintiff's testimony about the severity of her symptoms, and (3) failing to properly consider the episodic nature of bipolar disorder when forming the RFC.

**DISCUSSION**

**A.    Examining Psychologist, Donna J. Johns, Psy.D.**

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by examining psychologist, Dr. Johns.  ECF No. 11 at 17-21. The ALJ rejected the opinion of Dr. Johns for four reasons:  (1) it appeared to be based on Plaintiff's self-reports; (2) it was inconsistent with Plaintiff's daily activities; (3) there were minimal treatment records; and (4) the medical evidence

did not support the opinion.  Tr. 25.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician.  *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).  The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.  *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Lester*, 81 F.2d at 830.  When an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the examining physician.  *Id.* at 830-831.

This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.  *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989).  "The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  *Embrey v. Bowen,* 849 F.2d 418, 421-422 (9th Cir. 1988).

Both Plaintiff and Defendant agree that Dr. Johns qualifies as an examining physician.  ECF No. 11 at 18; ECF No. 14 at 15.  Plaintiff asserts that the clear and convincing standard applies.  ECF No. 11 at 18.  Defendant asserts that specific and legitimate standard applies.  ECF No. 14 at 16.  In any event, the Court determines that the ALJ's reasons for rejecting Dr. Johns' opinion fails to meet the lower standard of specific and legitimate.  *See infra*.  Therefore, the higher standard of clear and convincing is also not met.

First, the ALJ rejected Dr. Johns' opinion because it appeared to be based on Plaintiff's self-reports. If a physician's opinion is based on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount that physician's opinion. See *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005). But, the ALJ must explain how he reached the conclusion that the opinion was based on applicant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

Here, the ALJ concluded that Dr. Johns' opinion was based on Plaintiff's self-reports, Tr. 25, and that Plaintiff was not credible. Tr. 24. But, the ALJ did not state why or how he concluded that Dr. Johns' opinion was based on Plaintiff's self-reports. Defendant asserts that *Ghanim* does not apply because the ALJ gave controlling weight to the opinion of the State agency reviewer, Dr. Kraft, and Dr. Kraft stated that Dr. Johns' opinion was based on Plaintiff's self-report. ECF No. 14 at 15-16. The Court disagrees.

The ALJ did not refer to Dr. Kraft's conclusion that Dr. Johns' opinion was based on Plaintiff's self-reports in his decision. Furthermore, Dr. Johns' evaluation includes several clinical observations of the Plaintiff: "evidence of mild psychomotor agitation"; "infrequent, hesitant eye contact"; "[e]vidence of any moderate disturbances in through processes as seen in tangential and circumstantial dialogues"; "speech demonstrated marked pressure"; and "[e]vidence of moderate impairment [in concentration] as witnessed by being able to successfully engage[] in counting backwards with serial 3's with moderate latency and frequent redirection." Tr. 288-289.

Therefore, the ALJ's assertion, without further explanation, that Dr. Johns' opinion was based on Plaintiff's self-report is not a specific and legitimate reason for rejecting Dr. Johns' opinion.

The second reason the ALJ rejected Dr. Johns' opinion, that the opinion was inconsistent with Plaintiff's daily activities, is also not a specific and legitimate

reason for rejecting the opinion. "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey,* 849 F.2d at 421-422 (9th Cir. 1988). Here, the ALJ failed to state which of Plaintiff's activities are inconsistent with Dr. Johns' opinion. The ALJ's statement alone that the Plaintiff's daily activities are inconsistent with the opinion is insufficient to reach the specific and legitimate standard.

The third reason the ALJ rejected Dr. Johns' opinion, that there were minimal treatment records, is also not a specific and legitimate reason for rejecting the opinion. The Ninth Circuit has repeatedly held that the unexplained or inadequately explained failure to seek treatment can be used to undermine the credibility of a plaintiff's statements. *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *Ghanim*, 763 F.3d at 1163; *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). But, it cannot be used to undermine the credibility of an examining physician because a physician does not hold any burden of proof in a social security claim. Plaintiff carries the burden of proving disability at steps one through four. *Tackett*, 180 F.3d at 1098-1099. The ALJ has a duty to develop the record when the record is insufficient to support a decision on the claim. *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001). A physician does not hold the burden of proof or the duty to develop. Therefore, finding a physician less than fully credible due to her failure to fulfill a nonexistent burden or duty is not a specific and legitimate reason for rejecting her opinion.

The fourth reason the ALJ gave for rejecting Dr. Johns' opinion, that the medical evidence did not support the opinion, also fails to meet the specific and legitimate standard. Once again, "[t]he ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Embrey,* 849 F.2d at 421–22 (9th Cir. 1988). Here, the ALJ failed to state what medial evidence was inconsistent with Dr.

Johns' opinion.  The ALJ's statement alone that the medical records were inconsistent with the opinion is insufficient to reach the specific and legitimate standard.

In conclusion, the ALJ failed to set forth specific and legitimate reasons for rejecting the opinion of the examining psychologist Dr. Johns.  Therefore, this case shall be remanded for a new weighing of the medical opinion of Dr. Johns.

**B.    Step Two**

Plaintiff asserts that the ALJ erred at step two in two ways:  (1) he failed to classify ADHD as a severe impairment, and (2) he misclassified Plaintiff's bipolar disorder as a mood disorder.  ECF No. 11 at 21-22.

The step-two analysis is "a de minimis screening device used to dispose of groundless claims."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).  An impairment is "not severe" if it does not "significantly limit" the ability to conduct "basic work activities."  20 C.F.R. §§ 404.1521(a), 416.921(a).  Basic work activities are "abilities and aptitudes necessary to do most jobs."  20 C.F.R. § 416.921(b).  "An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work."  *Smolen*, 80 F.3d at 1279 (internal quotation marks omitted).

**1.    ADHD**

As to Plaintiff's first assertion, that ADHD was not classified as a severe impairment at step two, a plain reading of the ALJ's title and two subsequent paragraphs at his step two determination shows that ADHD was found as a severe impairment:

**3.  The claimant has the following severe impairments: anxiety and mood disorder (20 CFR 404.1520(c) and 416.920(c)).**

Gregory Zuck, M.D., diagnosed anxiety, major depressive disorder, and attention deficit hyperactivity disorder.  (Ex.  2F, p. 1).

ORDER GRANTING PLAINTIFF'S MOTION . . .  - 9

The above impairments caused significant limitations in the claimant's ability to perform basic work activities during this period.

Tr. 21.  While the ALJ failed to include ADHD in the bolded heading, he concluded ADHD "caused significant limitations in claimant's ability to perform basic work activities."  Although there is no error, the Court does find the ALJ's statements less than entirely clear.  Since this case is being remanded for additional proceedings, the ALJ is directed to make a new step two determination that clearly sets forth what impairments are considered severe and what impairments are considered non-severe and the reasons for so finding.

### 2.    Bipolar II Disorder

Plaintiff asserts that the ALJ misclassified her bipolar disorder as a mood disorder at step two resulting in the ALJ failing to take into consideration the waxing and waning of symptoms associated with bipolar disorder.  ECF No. 11 at 9-14, 21-22.  At the time of the ALJ's decision, the American Psychiatric Association classified Bipolar I Disorder and Bipolar II Disorder as Mood Disorders.  AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 345-346 (4th ed. Text Revision 2000).[1]  Treating physician,

---

[1]At the time of the ALJ's decision, the DSM-IV-TR was the controlling diagnostic criteria.  The Fifth Edition of the DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS was released during the APA's 2013 Annual Meeting in San Francisco, CA held May 18-22, 2013.  Am. Psychiatric Ass'n, DSM-5 Development: Timeline, http://www.dsm5.org/about/Pages/Timeline.aspx (last visited Nov. 13, 2015).  The Fifth Edition classifies Bipolar I Disorder and Bipolar II Disorder in their own subsection, titled "Bipolar and Related Disorders."  AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 123-154 (5th ed. 2013).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 10

Gregory Zuck, M.D., diagnosed Plaintiff with "Bipolar Affective Nos."  Tr. 268, 273, 278.  Examining psychologist, Dr. Johns, diagnosed Plaintiff with "Bipolar II Disorder, depressed."  Tr. 290.  Considering the difference in diagnoses in the record, the ALJ characterizing Plaintiff's mental impairment as a mood disorder, while perhaps not specific, is not an error because the diagnosis of mood disorder is supported by substantial evidence.

As to the Plaintiff's assertion that the ALJ erred by failing to consider the waxing and waning symptoms of bipolar disorder, on remand, the ALJ is directed to elicit the testimony of a psychological medical expert regarding the waxing and waning nature of Plaintiff's symptoms and to assist the ALJ in determining an RFC that reflects the most Plaintiff can do despite her limitations.  *See* 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").

## C.    Credibility

Plaintiff contests the ALJ's finding that Plaintiff is less than fully credible. ECF No. 11 at 14-17.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).  Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing."  *Smolen*, 80 F.3d at 1281; *Lester*, 81 F.3d at 834.  "General findings are insufficient:  rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."  *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff less than fully credible concerning the intensity, persistence, and limiting effects of her symptoms.  Tr. 24.  The ALJ reasoned that Plaintiff was less than credible because (1) her symptom reporting was contrary to

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

her daily activities, and (2) she had a history of minimal, conservative medical treatment.  Tr. 24.

First, the ALJ found Plaintiff to be less than fully credible because her daily activities were inconsistent with her reported symptoms.  The ALJ concluded that Plaintiff's ability to care for pets, complete household chores, drive, shop, care for her son, visit friends, fish, hike, and spend time with other parents was inconsistent with her reported symptoms.  Tr. 24.

A claimant's daily activities may support an adverse credibility finding if (1) the claimant's activities contradict her other testimony, or (2) "the claimant is able to spend a substantial part of [her] day engaged in pursuits involving performance of physical functions that are transferable to a work setting."  *Orn*, 495 F.3d at 639 (citing *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)).  "The ALJ must make 'specific findings relating to [the daily] activities' and their transferability to conclude that a claimant's daily activities warrant an adverse credibility determination."  *Id.* (quoting *Burch v. Barnhart,* 400 F.3d 676, 681 (9th Cir. 2005)).  A claimant need not be "utterly incapacitated" to be eligible for benefits.  *Fair*, 885 F.2d at 603.

Here, the ALJ simply concluded with Plaintiff's activities were inconsistent with her reported symptoms.  He did not find that any specific activity contradicted her testimony or that Plaintiff was engaged in activities that transferred to a work setting.  Therefore, this does not meet the specific, clear and convincing standard and is not sufficient to support an adverse credibility determination.

Second, the ALJ found that Plaintiff was less than fully credible because she had a history of minimal, conservative treatment.  Tr. 24.  Noncompliance with medical care or unexplained or inadequately explained reasons for failing to seek medical treatment cast doubt on a claimant's subjective complaints.  20 C.F.R. §§ 404.1530, 416.930; *Fair*, 885 F.2d at 603.  But, a claimant's failure to follow a course of treatment may be excused if the claimant cannot afford the treatment.

1    *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

2         The Plaintiff made statements that she did not have medical insurance and

3    did not have the financial ability to seek treatment.  Tr. 250, 257.  Additionally, she

4    reported that she could not afford her medication when being seen at the

5    emergency room.  Tr. 265.  The ALJ failed to consider Plaintiff's ability to afford

6    treatment when making his adverse credibility determination.  Therefore, this

7    reason does not meet the specific, clear and convincing standard.

8         As such, the ALJ is directed to make a new credibility determination on

9    remand.

10                                  **REMEDY**

11        Plaintiff argues that the ALJ's decision should be reversed and remanded for

12   an immediate award of benefits.  EFC No. 11 at 22.  The decision whether to

13   remand for further proceedings or reverse and award benefits is within the

14   discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.

15   1989).  The Court may award benefits if the record is fully developed and further

16   administrative proceedings would serve no useful purpose.  *Smolen*, 80 F.3d at

17   1292.  Remand for additional proceedings is appropriate when additional

18   proceedings could remedy defects.  *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th

19   Cir. 1989).  In this case, it is not clear the ALJ would be required to find Plaintiff

20   disabled if the record was fully developed and all the evidence were properly

21   evaluated.  Further proceedings are necessary for a proper determination to be

22   made.

23        On remand, the ALJ shall reassess Plaintiff's RFC, giving proper weight to

24   the opinion of Dr. Johns and considering all other medical evidence of record

25   relevant to Plaintiff's claim for disability benefits.  The ALJ is directed to elicit

26   testimony from a psychological expert to assist the ALJ in formulating the new

27   RFC determination.  Additionally since the proceedings on remand are to be *de

28   novo*, the ALJ is directed to make a new credibility determination, to make a new

step two finding, to obtain testimony from a vocational expert, and take into consideration any other evidence or testimony relevant to Plaintiff's disability claim.

**CONCLUSION**

Accordingly, **IT IS ORDERED:**

1.      Defendant's Motion for Summary Judgment, **ECF No. 14**, is **DENIED**.

2.      Plaintiff's Motion for Summary Judgment, **ECF No. 11**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED December 29, 2015.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 14